## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIANNE SAWICKI, | : | Civil No. 1:21-CV-02031 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL M. KIPPHAN, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

This action was brought by Plaintiff Marianne Sawicki ("Sawicki") to obtain equitable relief and recover damages, asserting claims against ten Defendants for First Amendment retaliation, deprivation of a liberty interest in violation of the Fourteenth Amendment, and deprivation of a property interest in violation of the Fourteenth Amendment.  (Doc. 29.)  Before the court are five motions to dismiss filed by Defendants.  (Docs. 38, 39, 40, 41, 57.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At all times relevant to this action, Defendant Judge George Zanic ("Judge Zanic") was the President Judge of the Court of Common Pleas of Huntingdon County.  (Doc. 29, ¶ 17.)  Defendant Angela Robinson ("Robinson") is the Court Administrator for the Court of Common Pleas of Huntingdon County.  (*Id.* ¶ 19.)  Sawicki was a licensed attorney in the Commonwealth of Pennsylvania, practicing

through the Law Office of Marianne Sawicki, LLC in the Borough of Huntingdon. (*Id.* ¶ 13.)

Sawicki alleges that Barbara Kissinger ("Kissinger") retained Sawicki as her attorney on November 6, 2019, to represent Kissinger in two cases in the Court of Common Pleas of Huntingdon County: one involving a criminal matter and one involving a lien. (*Id.* ¶¶ 24–26.) There was extensive media coverage in the local newspaper about Kissinger's cases. (*Id.* ¶ 25.) Sawicki entered an appearance on behalf of Kissinger on November 6, 2019. (*Id.* ¶ 27.) No attorney was listed for Kissinger prior to Sawicki's entry of appearance, however Defendant Christopher Wencker ("Wencker") was listed as the court appointed public defender in the Magisterial District Court for preliminary proceedings. (*Id.* ¶ 27).

According to the allegations in the amended complaint, Sawicki filed a Waiver of Appearance at Arraignment for Kissinger due to Kissinger's emotional distress from the media coverage surrounding her criminal case. (*Id.* ¶ 28.) Accordingly, Sawicki appeared at Kissinger's arraignment on November 7, 2019 on Kissinger's behalf, but instructed Kissinger that she did not need to attend. (*Id.* ¶ 34.) Therefore, Kissinger was not present at the start of the proceedings. (*Id.* ¶ 36.) The amended complaint contends that on information and belief, Kissinger's absence "thwarted a plan to stage what Wencker termed 'a media circus' in the crowded courtroom and thereby to garner more of the usual favorable coverage for

those defendants who hold elective office," namely Judge Zanic and Defendant District Attorney David Smith ("DA Smith").  (*Id.* ¶ 37.)

That morning, Wencker, Judge Zanic, and Defendant Lori Heaton ("Heaton"), who was the supervisor for Huntingdon Area Aging Agency on Aging ("the AAA"), contacted Kissinger and threatened her with arrest unless she came to the courthouse, explaining that Sawicki's legal advice was wrong and dangerous.  (*Id.* ¶¶ 39–40.)  Kissinger then came to the courthouse, where Heaton met her and told her not to speak with Sawicki.  (*Id.* ¶ 44–45.)  Sawicki attempted to speak with Kissinger, but was physically forced away from her by an agent of DA Smith.  (*Id.* ¶ 49.)

When Kissinger's case was called, both Sawicki and Wencker stood up, but Judge Zanic forbade Sawicki to speak.  (*Id.* ¶¶ 52–53.)  Wencker then proceeded to handle the case.  (*Id.* ¶ 55.)  Kissinger confirmed to Judge Zanic that Sawicki represented her and began weeping and stated that she did not know what to do. (*Id.* ¶¶ 61–62.)  Judge Zanic then halted the proceedings and instructed Heaton to arrange for an evaluation of Kissinger by the AAA.  (*Id.* ¶ 63.)

Later that day, Sawicki mailed a certified letter to Kissinger to terminate their pro bono contract.  (*Id.* ¶ 65.)  Kissinger refused to accept delivery of the contract termination letter.  (*Id.* ¶ 67.)  Sawicki copied Heaton and Wencker on the letter as well.  (*Id.* ¶ 68.)  Sawicki then met with Kissinger two days later, on

November 9, 2019, and Kissinger again retained Sawicki and asked that Sawicki represent her in both the criminal and lien case. (*Id.* ¶¶ 71–72.) The new agreement was not reduced to writing. (*Id.* at ¶ 74.) Because Kissinger never accepted the contract termination letter, they both understood the "Agreement for Representation" from November 6, 2019 was still intact. (*Id.* at ¶ 75.)

Sawicki then wrote to Wencker on November 14, 2019 requesting his file on Kissinger's criminal case. (*Id.* ¶ 76.) Defendants continued to contact Kissinger and advised Kissinger that the termination letter of November 7, 2019 cancelled any subsequent agreement that Kissinger might have made with Sawicki. (*Id.* ¶ 80.)

The civil lien case for which Sawicki was representing Kissinger involved Defendant Borough of Huntingdon ("the Borough") seeking to recover the costs of the demolition of Kissinger's house in September 2019 from Kissinger. (*Id.* ¶ 83.) The Borough was represented by Defendant Richard Wilson ("Wilson"), the Borough's Solicitor, in the lien case. (*Id.* at ¶ 89.) While Sawicki was litigating the lien case, she gathered documentation that she believed suggested that the Borough looted and demolished Kissinger's home without providing Kissinger with the due process specified in the Borough's own ordinances. (*Id.* ¶¶ 82, 84.) Sawicki also learned that when a friend of Kissinger's attempted to file a timely appeal of the Borough's demolition order, courthouse staff threatened the friend

with adverse action if she were to attempt to contact Judge Zanic again, so the appeal was not pursued.  (*Id.* ¶¶ 85–86.)

Sawicki served formal discovery requests on Wilson on November 25, 2019, and notified the Borough of her intent to serve a subpoena.  (*Id.* ¶¶ 89, 91.)  Wilson sought assistance from DA Smith, who then sought to intervene and filed a "Motion to Quash Subpoena," even though the subpoena had not yet been served. (*Id.* ¶¶ 96, 101.)  Heaton contacted Kissinger and advised her that Sawicki was no longer representing her due to the November 7, 2019 letter, and encouraged Kissinger to cooperate with Wilson.  (*Id.* ¶¶ 103, 107.)  Heaton also urged Kissinger to rely on Wencker for legal advice.  (*Id.* ¶ 110.)

Prior to serving discovery requests on opposing counsel, Sawicki moved to stay the proceedings in the lien case on November 18, 2019.  (*Id.* ¶ 111.)  This motion to stay was unopposed, but Judge Zanic denied it.  (*Id.* ¶ 112.)  On December 6, 2019, following receipt of discovery requests and a notice of intent to serve a subpoena from Sawicki, Wilson filed a motion to stay proceedings on behalf of the Borough.  (*Id*. ¶ 113.)  Attached to Wilson's motion was a fax that indicated it was transmitted on December 5, 2019 at 5:26 p.m. from the AAA.  (*Id.* ¶ 114.)  The fax was a note to Wilson signed by Kissinger stating:

> I have received a letter dated 11/7/2019 from Attorney Marianne Sawicki stating that she has withdrawn from the Agreement for Legal Representation for me.  I have now been in touch with Attorney Chris

Wencker and will meet with him on 12/9/2019 yo [sic] review my situation, however as of today I have not retained another attorney.

(*Id.* ¶ 117.)

Sawicki alleges that the Borough, the AAA, Wilson, or Heaton wrongfully persuaded Kissinger, who was emotionally fragile, to allow the AAA to transmit this fax to Wilson, who was an adverse party in the lien case. (*Id.* ¶ 116.) Additionally, because Kissinger's house had been demolished, Sawicki asserts that Kissinger herself had no way to type or print anything, and therefore that the statement was typed by someone else, likely Heaton or Wilson. (*Id.* ¶ 118–19.)

On December 10, 2019, Wencker attempted to enter his own appearance in the lien case on behalf of Kissinger, stating that Sawicki had withdrawn her appearance. (*Id.* ¶ 123.) Upon receipt of this filing, Sawicki reasserted her representation on December 16, 2019. (*Id.* ¶ 124.) The following day, December 17, 2019, Judge Zanic entered a stay in the lien case. (*Id.* ¶ 125.)

On information and belief, Sawicki contends that Heaton, Wilson, and Judge Zanic wrongfully conspired[1] to discredit Sawicki, undermine her relationship with Kissinger, and retaliate against her for her aggressive litigation and advocacy for civil rights, in a manner to be discovered. (*Id.* ¶ 122.) On the basis of these facts,

---

[1] Despite Sawicki's use of the term "conspired" here, the court notes that there is not currently a conspiracy claim in this case.

Sawicki alleges that Judge Zanic, Heaton, and Wencker interfered with her representation of Kissinger in the lien case.

Although the criminal case had been stayed on November 7, 2019, pending an evaluation of Kissinger by the AAA, on December 10, 2019, Judge Zanic appointed Attorney William Tressler ("Tressler") to represent Kissinger, citing an indigent application by Kissinger.  (*Id.* ¶¶ 129–131.)  Here, Sawicki asserts that Kissinger is not indigent and initially elected not to file such an application because she was receiving a pension.  (*Id.* ¶¶ 132.)  Sawicki contends that Wencker knew this information, but "apparently" told Kissinger that Judge Zanic disliked or was angry with Sawicki and persuaded Kissinger to sign an application form to obtain a public defender, then delivered the form to the courthouse, which was not processed and filed in the usual way.  (*Id.* ¶¶ 136–37.)  Sawicki asserts that there is no indigent application in the criminal case file and that Judge Zanic merely heard about it and appointed Attorney Tressler in an attempt to displace Sawicki.  (*Id.* ¶ 138.)  Sawicki alleges on information and belief that the appointment of Attorney Tressler "was arranged in consultations among several defendants for the improper purpose of concealing evidence of misconduct by municipal actors and retaliating against Sawicki for engaging in litigation to uncover that evidence."  (*Id.* ¶ 139.)

On December 16, 2019, Sawicki filed a praecipe citing the procedural rules that must be satisfied before she could withdraw as counsel.  (*Id.* ¶ 140.)  On

December 18, 2019, Judge Zanic issued an order stating that "the appearance of

Marianne Sawicki, Esquire, as counsel for Defendant, is set-aside and vacated, and

she shall be removed from the docket as counsel of record." (*Id.* ¶ 141.) Judge

Zanic lifted the stay of the criminal case on March 5, 2020. (*Id.* ¶ 142.) On July 9,

2021, Attorney Tressler entered a plea of *nolo contendere* on behalf of Kissinger to

two third-degree felony counts. (*Id.* ¶ 145.) Kissinger was sentenced to fourteen

years of probation with fines and costs totaling $20,000.00. (Id. ¶ 146.) As of the

time of the filing of the amended complaint in February 2022, the criminal case

remained on appeal. (*Id.*)

Sawicki compiled records to support an action by Kissinger against the

Borough to recover for violations of federal constitutional rights, including a

wrongful seizure of Kissinger's property. (*Id.* ¶ 151.) Sawicki alleges that

Wencker, Wilson, Heaton, Smith, Robinson, Judge Zanic, and Defendant Michael

Kipphan ("Kipphan"), the Solicitor for the AAA, retaliated against Sawicki by

intimidating Kissinger to the point where she declined to file suit before the statute

of limitations ran. (*Id.* ¶¶ 153–54.)

Judge Zanic placed a phone call to Paul Killian of the Disciplinary Board of

the Supreme Court of Pennsylvania and verbally complained about Sawicki. (*Id.* ¶

158.) Sawicki contends that Judge Zanic falsely accused her of professional

misconduct and asked Killian to initiate disciplinary proceedings against her

despite knowing that Sawicki had not violated any of the Rules of Professional
Conduct. (*Id.* ¶¶ 156–59.) Sawicki alleges that during interviews, Judge Zanic,
Robinson, and others made false and misleading statements to the Disciplinary
Board. (*Id.* ¶¶ 179–180.) According to Sawicki, these false statements were made
for the purpose of depriving her of her law license and ability to practice law. (*Id.*
¶ 173.)

The Disciplinary Board filed a petition for discipline against Sawicki in
September 2021. (*Id.* ¶ 230.) Sawicki alleges this has caused a detrimental impact
on her health and that she has suffered a financial loss because she had to transfer
all of her cases to other attorneys so she could focus on defending her law license.
(*Id.* ¶¶ 231–34, 236.) Sawicki further alleges that Judge Zanic, DA Smith,
Robinson, Kipphan, Wilson, and Wencker made false and misleading statements to
the Disciplinary Board for the purpose of depriving Sawicki of her law license and
ability to practice law. (*Id.* ¶¶ 179–180, 173.)

Specifically as to Robinson, Sawicki contends that Robinson communicated
false information about Sawicki to Judge Zanic on November 5, 2019, both
verbally and by email, perhaps composing the email at Judge Zanic's direction.
(*Id.* ¶¶ 170–71.) Judge Zanic then forwarded the email from Robinson to Killian
on the day of their phone call. (*Id.* ¶ 172.) Sawicki asserts that when Robinson
was interviewed by the Disciplinary Board, she submitted false and misleading

information that imputed misconduct to Sawicki for the purpose of depriving

Sawicki of her law license and ability to practice law.  (*Id.* ¶ 174.)

The Disciplinary Board held hearings on the Petition for Discipline against

Sawicki on February 16 and 17, 2022.  (*Id.* ¶ 237.)  Sawicki asserts that Judge

Zanic, Wencker, and Robinson falsely testified during these hearings.  (*Id.* ¶¶ 237,

244, 246.)

Sawicki initiated this action by filing a complaint on December 5, 2021.

(Doc. 1.)  The amended complaint, now the operative pleading, was filed on

February 22, 2022.  (Doc. 29.)  On March 3, 2022, both Wilson and the Borough

filed motions to dismiss the complaint.  (Docs. 38, 39.)  On March 7, 2022,

Huntingdon County ("the County"), Heaton, the AAA, Kipphan, DA Smith, and

Wencker, ("the County Defendants") and Judge Zanic filed motions to dismiss the

complaint.  (Docs. 40, 41.)  Judge Zanic filed a brief in support of his motion the

same date.  (Doc. 42.)

On March 10, 2022, the court granted Sawicki's motion to stay proceedings

until May 31, 2022.  (Doc. 44.)  Sawicki filed a second motion to stay proceedings

on May 20, 2022.  (Doc. 45.)  Both motions to stay were based on the pending

disciplinary proceedings against Sawicki.  (Docs. 43, 45.)  The court denied the

second motion to stay and confirmed the previously-scheduled telephone status

conference with the parties on May 31, 2022.  (Doc. 48.)  Following the telephone

status conference, the court issued an order staying discovery pending the resolution of the motions to dismiss and setting briefing deadlines for the motions to dismiss.  (Doc. 52.)  The Borough and Wilson filed briefs in support of their previously-filed motions on June 13, 2022.  (Docs. 55, 56.)  Robinson then timely filed a motion to dismiss and brief in support on June 14, 2022.  (Docs. 57, 58.)

On June 20, 2022, Sawicki timely filed a brief in opposition to Judge Zanic's motion.  (Doc. 59.)  Sawicki filed a brief in opposition to Robinson's motion to dismiss on June 30, 2022.  (Doc. 62.)  On July 7, 2022, Sawicki filed a brief in opposition to Wilson's motion to dismiss.  (Doc. 63.)  On July 9, 2022, Sawicki filed a brief in opposition to the Borough's motion to dismiss.  (Doc. 64.)  Sawicki filed a brief in opposition to the County Defendants' motion to dismiss on July 12, 2022.  (Doc. 65.)  County Defendants, Wilson, the Borough, and Robinson and Judge Zanic filed reply briefs on July 26, 2022.  (Docs. 68–71.)  On August 12, 2022, following an order granting leave to file, Sawicki filed a sur-reply brief addressing arguments raised in various Defendants' reply briefs.  (Doc. 79.)  Therefore, all motions are ripe for resolution.

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the

Constitution, laws, or treaties of the United States.  Venue is appropriate under 28 U.S.C. § 1391.

**STANDARD OF REVIEW**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts that affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

DISCUSSION

In the pending motions, Defendants raise several arguments relating to dismissal of the claims, including numerous types of immunity, failure to state a claim, [2] and the appropriateness of the request for declaratory relief.  (*See* Docs. 38–42, 51, 55–58.)  Because the court finds that the complaint fails to state a claim upon which relief can be granted for any count in the complaint, the court need not address the additional arguments raised in this opinion.

All counts in the complaint are brought pursuant to 42 U.S.C. § 1983, which requires both a constitutional injury and that the violation be committed by a person acting under color of state law.  *See* 42 U.S.C. § 1983.

## A. First Amendment Retaliation

The first claim at issue is Sawicki's First Amendment retaliation claim.  To plead a plausible First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).  In examining the complaint, Sawicki seemingly defines her protected activity as her "litigation br[inging] to

---

[2] The court notes that failure to state a claim was raised and argued by all Defendants *except* Judge Zanic.  For purposes of this opinion, when referred to "moving Defendants," the court refers to all Defendants who moved for dismissal on the ground that the complaint fails to state a claim upon which relief can be granted excluding Judge Zanic.

light certain specific wrongful actions and omissions on the part of the Borough, County, the AAA, and their employees or agents named as defendants in this action." (Doc. 52, ¶ 285.) In her briefs in opposition, Sawicki contends that she engaged in numerous protected activities: "defense of Barbara Kissinger, a client, against criminal charges; civil litigation to avert seizure of Kissinger's property; pursuit of discovery to document municipal violations of Kissinger's constitutional rights; and discussion of the relief potentially available to Kissinger in federal court." (Doc. 62, p. 22; Doc. 63, pp. 24–25; Doc. 65, p. 30.)[3]

Sawicki has not cited any authority to support her proposition that she had a First Amendment right to represent Kissinger in the criminal case and civil lien case. In fact, Sawicki cites case law that directly refutes this assertion. *See Jacoby and Myers, LLP v. Presiding Justices of 1st, 2d, 3d, and 4th Dep'ts of Sup. Ct. of N.Y.*, 852 F.3d 178, 186 (2d Cir. 2017) ("The Supreme Court has never held that attorneys themselves have a First Amendment right to associate with current or potential clients, or their *own* right to petition the government for the redress of their clients' grievances when the lawyers are acting as advocates for others, and not advocating for their own cause."); *see also Nat'l Ass'n for the Advancement of Multijurisdiction Practice (NAAMJP) v. Castille*, 799 F.3d 216, 224 (3d Cir. 2015) ("Appellants provide no support for the proposition that the Petition Clause

---

[3] For ease of reference, the court utilizes the page numbers in the CM/ECF header.

protects the right of an *attorney* to appeal to courts or other forums on behalf of another").  Therefore, it is clear that Sawicki does not have a First Amendment right to litigate criminal or civil lien cases on behalf of Barbara Kissinger, or to conduct discovery in the lien case.  To the extent that her First Amendment retaliation claim is based on that conduct, Sawicki has not adequately pleaded that she engaged in protected activity.

As to Sawicki's argument that discussion of the relief potentially available to Kissinger in federal court was a protected activity, she argues at length in her briefs that this is because of her general *pro bono* civil rights litigation practice.  (Doc. 62, p. 24; Doc. 63, p. 27; Doc. 65, p. 32.)  In her sur-reply brief, Sawicki asserts that her law firm, The Law Office of Marianne Sawicki, LLC, "did nothing but *pro bono* civil-rights litigation between 2014 and 2020."  (Doc. 79, p. 9.)

In support of this argument, Sawicki cites case law in which the Supreme Court held that there exists some level of First Amendment protection for "attorneys who, as part of an advocacy group like the [American Civil Liberties Union] or the [National Association for the Advancement of Colored People], have recognized associational rights," as opposed to "attorneys who are engaged in litigation for their own commercial rewards, albeit in the context of advancing or protecting the interests of their clients."  *Jacoby*, 852 F.3d at 185–86 (citing

*NAACP v. Button*, 371 U.S. 415, 428–29 (1963) and *In re Primus*, 436 U.S. 412,

431 (1978)).  In making this distinction, the Supreme Court has held that

> Normally the purpose or motive of the speaker is not central to First
> Amendment protection, but it does bear on the distinction between
> conduct that is an associational act of expression, and other activity
> subject to plenary regulation by government.  *Button* recognized that
> certain forms of cooperative, organizational activity, including
> litigation, are part of the freedom to engage in association for the
> advancement of beliefs and ideas, and that this freedom is an implicit
> guarantee of the First Amendment.  As shown above, [the *Primus*]
> appellant's speech—as part of associational activity—was expression
> intended to advance beliefs and ideas.  In *Ohralik* [*v. Ohio State Bar
> Association*, 436 U.S. 447 (1978)], the lawyer was not engaged in
> associational activity for the advancement of beliefs and ideas; his
> purpose was the advancement of his own commercial interests.

*Primus*, 436 U.S. at 438, n.32.  In so holding, the Court compared the ACLU and

the NAACP, noting that both organizations "[engage] in extensive educational and

lobbying activities" and "[devote] much of [their] funds and energies to an

extensive program of assisting certain kinds of litigation on behalf of [their]

declared purposes."  *Id*. at 427 (quoting *Button*, 371 U.S. at 419–20).

The line of cases cited by the parties on this issue does not, as argued by

Sawicki, state broadly that "attorneys who conduct litigation *pro bono* as a

component of their advocacy for civil rights," are engaged in constitutionally

protected conduct.  Moreover, Sawicki has not pleaded that her law firm is an

organization that engages in educational and lobbying activities, or that the firm

devotes much of its funds and energies to an extensive program of assisting certain

kinds of litigation.  In fact, the amended complaint does not mention Sawicki's law firm at all, aside from indicating that she practices through the Law Office of Marianne Sawicki LLC.  It is not until Sawicki's sur-reply brief that she first mentions her law firm and its *pro bono* civil rights litigation.  Thus, while a lawyer's *pro bono* civil rights litigation *may*, under some circumstances, constitute a protected activity, such circumstances have not been adequately pleaded here. Therefore, moving Defendants' motions to dismiss the First Amendment retaliation claim for failure to state a claim are granted because Sawicki has not adequately pleaded a protected activity.

### B. Due Process

Next are Sawicki's due process claims premised on her right to practice law as a liberty interest and the operating funds of her law firm as a property interest. For due process claims under 42 U.S.C. § 1983, a plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to her did not provide due process of law.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Moving Defendants' arguments on the due process claims center on whether Sawicki pleaded a deprivation of cognizable property and liberty interests.  The amended complaint alleges that the liberty interest at issue is Sawicki's practice of

law and that the property interest at issue is her business, a law practice, and reimbursement for expenditure of resources to which Sawicki was entitled. (Doc. 29, ¶¶ 289, 293.)

### 1. Right to Practice Profession

The right to practice a chosen profession free from unreasonable interference by the state "comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994); *see also Casella v. Pa. Interest on Lawyers Trust Acct. Bd.*, 47 Fed. App'x 193, 195 (3d Cir. 2002) (holding that a license to practice law constitutes a property interest that deserves procedural due process protection).

Nonetheless, Sawicki's procedural due process claim fails, because she has failed to allege that she has been deprived of this interest, as she has not alleged that she las lost her license to practice law or that her license has been otherwise impaired. *See Casella*, 47 Fed. Appx. at 195.[4]  Additionally, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. *Alvin*, 227 F. 3d at 116.

---

[4] Sawicki notes that she voluntarily retired her license to practice law based on health concerns. (Doc. 63, p. 32; Doc. 65, p. 37.)  Sawicki requests that the court take judicial notice of the retirement of her law license in March 2022, shortly after the filing of the amended complaint. (*Id.*)  However, it is not clear to the court that Sawicki's contention that the Defendants' conduct caused health issues that later may have led to her voluntarily retiring her law license would constitute deprivation of a liberty or property interest.

The amended complaint is devoid of allegations that Sawicki has taken advantage of all processes available to her, as she is awaiting the decision of the Disciplinary Board.  Rather, the amended complaint and the docket in this case are replete with allegations and information relating to the ongoing disciplinary process.  *See Casella*, 47 Fed. App'x at 195 (holding that plaintiff failed to allege deprivation of a protected property interest where the Disciplinary Proceedings had not yet concluded).   Furthermore, should that decision be adverse to her, Sawicki has the ability to challenge it before the Pennsylvania Supreme Court.[5]  *See Murphy v. Office of Disciplinary Counsel*, No. 17-1239, 2019 U.S. Dist. LEXIS 167650, at *64 (E.D. Pa. Sep. 30, 2019), *aff'd*, 820 Fed. App'x 89 (3d Cir. 2020). The amended complaint is likewise devoid of allegations relating to any potential inadequacy of those processes.

Therefore, while Sawicki has adequately pleaded a cognizable liberty and/or property interest in her license and right to practice law, she has not pleaded that she has been deprived of that interest given the pending disciplinary proceedings, and in any event, she has not pleaded that she was denied due process.  Thus, the amended complaint fails to state a claim for denial of due process based on

---

[5] Moreover, as noted in Wilson's brief in support of his motion to dismiss, even if Sawicki's license is ultimately revoked or suspended, she will not have a viable Fourteenth Amendment claim because he does not have the legal authority to revoke or suspend her law license.  (Doc. 56, p. 15.)  The Pennsylvania Supreme Court and the Pennsylvania Disciplinary Board have the exclusive jurisdiction to discipline attorneys in Pennsylvania.  Pa. R.D.E. 201(a)(1).  While only argued by Wilson, the argument is relevant for all Defendants.

Sawicki's interest in her license to practice law.  Moving Defendants' motions to dismiss count two for failure to state a claim are granted.

### 2.  Business and Funds

As to count three, Sawicki defines the property interest at issue differently in the briefs than she does in the amended complaint.  While the amended complaint mentions her business and "reimbursement for expenditure of resources to which plaintiff was entitled," her briefs in opposition identify the property interest at issue as "the operating funds earmarked for civil-rights litigation by the plaintiff's law practice, the accounts receivable and due on the basis of contracts with clients that had to be abandoned, and the income reasonably expected from future legal work." (Doc. 62, pp. 29–30; Doc. 63, p. 33; Doc. 65, p. 38.)  Sawicki also cites portions of the complaint mentioning the loss of expenses for potential Kissinger litigation and anticipated income.  (*Id.*)

The Third Circuit Court of Appeals has recognized two strands of substantive due process, differentiated by the nature of the government action: legislative versus non-legislative.  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000).  Non-legislative, or executive, actions "typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society."  *Id.* at 139, n.1. Here, it is clear that Sawicki's claims would be non-legislative.

22

To prevail on a non-legislative substantive due process claim, a plaintiff must first establish a protected property interest to which the Fourteenth Amendment's protection applies. *Id.* at 139–40. The Third Circuit has required plaintiffs to identify a "particular quality of property interest." *Id.* at 140. Whether a certain property interest embodies this particular quality is not determined by reference to state law, but depends on whether that interest is "fundamental" under the Constitution. *Id.* The asserted property interest must be considered against the background of constitutional purposes, rationally developed and historically perceived, with respect for the teachings of history and a solid recognition of the basic values that underlie our society. *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229–30 (1985) (Powell, J. concurring).

In a decision by the Third Circuit cited by both Sawicki and Wilson, the plaintiff asserted property interests in the recognition of its training program under an ordinance so that it could continue to place its trainees (and in turn receive future discretionary funding from the city or related agencies) and to recover long-term fixed costs it expended in creating its training program. *Connection Training Servs. v. City of Phila.*, 358 Fed. App'x 315, 320 (3d Cir. 2009). The court held that such interests were not fundamental under the Constitution, nor were they basic values underlying society. *Id.* In doing so, the court noted that the plaintiff's asserted interests were analogous to the numerous interests the court has previously

23

declined, those which rely on statutory rights or relationships with government agencies, and not interests that are similar to "the venerable common-law rights of real property ownership." *Id.* (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000).

The court notes that the only claimed property interest that is not speculative is the operating funds earmarked for civil rights litigation by Sawicki's law firm.[6] As to accounts receivable and due on the basis of contracts with clients that were abandoned, income reasonably expected from future legal work, and the loss of anticipated income from potential Kissinger litigation, the loss of such funds is far too speculative to support a due process claim. *See Kahan v. Slippery Rock Univ.*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd*, 664 Fed. App'x 170 (3d Cir. 2015) ("a generalized possible loss of future employment opportunities and financial harm was insufficient to support a reputation-based due process claim"); *see also Simpson v. Nicklas*, 500 Fed. App'x 185, 188 (3d Cir. 2012) (holding that in the context of a reputation-based due process claim, although what qualifies as "some additional right or interest" for the "stigma-plus" test is less than clear, possible loss of future employment opportunities and outright financial harm are insufficient). While the case law relates to reputation-based due process claims, if

---

[6] To the extent that Sawicki still maintains that the property interest at issue here is her business itself, she has not adequately pleaded that Defendants deprived her of that property.

financial harm and loss of future employment opportunities do not qualify as an "additional right or interest" for due process purposes in that context, it is clear that such claims would not be considered fundamental under the Constitution or basic values underlying society, as is required to qualify as a property interest. Sawicki does not have a constitutionally protected property interest in money she *may* have been awarded *if* she prevailed in pending cases, or fees she *may* have been awarded *if* she prevailed in a civil rights lawsuit on behalf of Kissinger, had she chosen to file one.

As to the operating funds earmarked for civil rights litigation by Sawicki's law firm, though less speculative, she has not adequately pleaded or argued that she has a cognizable property interest in these funds. In the briefing, Sawicki provides no citations to authority in support of her contention that she has a property interest in those operating funds. Moreover, even assuming that she does have a cognizable property interest in the operating funds of her law firm, she has not adequately pleaded that Defendants deprived her of that interest. Rather, upon a Petition for Discipline being filed, Sawicki elected to use the operating funds to defend her law license. Therefore, even in the most liberal reading of the amended complaint, Sawicki has failed to plead that Defendants deprived her of a property interest without due process. Thus, the amended complaint fails to state a claim for substantive due process based on Sawicki's interest in the funds from her law

firm.  Moving Defendants' motions to dismiss count three for failure to state a claim are granted.

## CONCLUSION

For the foregoing reasons, the court will grant moving Defendants' motions to dismiss.  (Docs. 38, 39, 40, 57.)  The amended complaint, Doc. 29, is dismissed without prejudice.  Because the amended complaint is dismissed, Judge Zanic's motion to dismiss, Doc. 41, is denied as moot.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 24, 2023