# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIANNE SAWICKI,       :   Civil No. 1:21-CV-2031
                           :
     Plaintiff,          :
                           :
     v.                  :
                           :
MICHAEL M. KIPPHAN, *et al.*   :
                           :
     Defendants.      :   Judge Jennifer P. Wilson

## MEMORANDUM

Plaintiff Marianne Sawicki ("Sawicki") filed her second amended complaint, alleging First Amendment retaliation, violations of due process, and conspiracy against various individual defendants, the County of Huntingdon ("County), and the Borough of Huntingdon ("Borough") for actions allegedly taken against her because of her civil rights advocacy within the county. (Doc. 85.) Each defendant has moved to dismiss the second amended complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and immunity grounds. (Docs. 88, 90, 91, 106.) For the reasons that follow, the court will grant the motions and dismiss the second amended complaint with prejudice.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court will begin by describing the parties and their respective roles. At all times relevant to this action, Defendant Judge George Zanic ("Judge Zanic")

was the President Judge of the Court of Common Pleas of Huntingdon County. (Doc. 85, ¶ 13.)  Defendant Angela Robinson ("Robinson") was the Court Administrator for the Court of Common Pleas of Huntingdon County.[1]  (*Id.* ¶ 14.) Defendant Michael M. Kipphan ("Kipphan") was the solicitor for Huntingdon-Bedford-Fulton Area Agency on Aging ("AAA"), a municipal agency. (*Id.* ¶¶ 7, 9.)  Defendant Lori Heaton was an Aging Care Manager Supervisor at AAA.  (*Id.* ¶ 8.)  Defendant Christopher B. Wencker ("Wencker") was an attorney who contracted with Huntingdon County to provide legal representation to indigent criminal defendants.  (*Id.* ¶ 10.)  Defendant Honorable David G. Smith ("DA Smith") was the elected District Attorney for Huntingdon County.[2]  (*Id.* ¶ 11.) Finally, Defendant Richard A. Wilson ("Wilson") was the solicitor for Defendant Borough of Huntingdon ("Borough").  (*Id.* ¶¶ 15, 16.)  County of Huntingdon ("County") is also a Defendant.  (*Id.* ¶ 12.)

Sawicki was a licensed attorney in the Commonwealth of Pennsylvania, practicing through the Law Office of Marianne Sawicki, LLC ("Law Office").  (*Id.* ¶ 13.)  Sawicki retired her law license "in March 2022 because of deteriorating health."  (*Id.*)  Prior to retirement, however, Sawicki alleges that the Law Office

---

[1] Collectively, Judge Zanic and Robinson will be referred to as "Judicial Defendants."

[2] Together with Defendant Huntingdon County ("County"), Kipphan, Heaton, AAA, Wencker, and DA Smith will be referred to as "County Defendants."

pursued advocacy on behalf of "individuals who suffered oppression through abuse of governmental power[,]" including advocating for "humane conditions of confinement in the state and federal prisons, religious freedom for incarcerated Muslims, racial justice, disability accommodation, adequate medical care for prisoners, and strict accountability of government agencies for their infringement of civil liberties." (*Id.* ¶ 61.)  Sawicki was the only attorney at the Law Office. (*Id.* ¶ 62.)  Besides engaging in litigation, the Law Office also advised other civil rights litigators and prisoners on topics such as the Prison Litigation Reform Act. (*Id.* ¶ 65.)  Prior to the COVID-19 pandemic, Sawicki regularly visited prisons in the surrounding area.  (*Id.* ¶ 67.)  Sawicki also spoke as a guest speaker at prisons, high school, college, and law school classes.  (*Id.* ¶ 68.)

Sawicki begins her second amended complaint by describing her interactions with Judge Zanic prior to the fall of 2019, in his former capacity as the elected District Attorney of Huntingdon County.  (*Id.* ¶¶ 18–40.)  Descriptions of the relevant time period begin in September 2019, when Sawicki alleges that the Borough police filed criminal charges against Barbara Kissinger ("Kissinger") for animal abuse, and the Borough also filed a civil lien against Kissinger's home.  (*Id.* ¶¶ 42, 43.)  Sawicki alleges that a hearing regarding the demolition of Kissinger's home was held without appropriate notice while Kissinger was hospitalized.  (*Id.* ¶ 44.)  Demolition of the home occurred while Kissinger was incarcerated for the

criminal charges.  (*Id.* ¶ 47.)  The hearing was allegedly discussed at the Huntingdon County Courthouse by Clerk of Orphan's Court, Virginia Cooper, DA Smith, Heaton, Judge Zanic, and his deputy.  (*Id.* ¶ 130–32.)  Friends of Kissinger's contacted Sawicki regarding the situation, and Kissinger's friends retained Sawicki on November 2, 2019.  (*Id.* ¶ 49.)

On November 3, 2019, Sawicki began requesting records from the Borough's office regarding Kissinger's home and the meeting where its demolition was discussed.  (*Id.* ¶¶ 74, 75, 85–90.)  It appears that the Borough provided all requested documents on this topic.  (*Id.* ¶¶ 75, 85, 87.)

On November 5, 2019, Sawicki requested an escort by the Huntingdon County Sheriff's office in order to go to Kissinger's home because Sawicki believed Kissinger was in a dangerous situation.  (*Id.* ¶ 76.)  The sheriff's office informed Sawicki that they could provide the escort if a judge "gave leave."  (*Id.*)  Accordingly, Sawicki called Robinson and requested a time to speak to Judge Zanic.  (*Id.*)  Robinson declined to set up a time to meet, and informed Sawicki that she must bring a proposed order.[3]  (*Id.*) Sawicki complied with this request and

---

[3] Sawicki alleges that her request to speak with Judge Zanic was pursuant to Huntingdon County Court of Common Pleas Local Rule 208.3(A)(6) and Robinson's and Zanic's actions throughout this encounter were "irregular."  (*Id.* ¶¶ 76, 78.)  Huntingdon County Local Rule 208.3(A)(6) provides "[m]otions seeking emergency relief may be presented directly to the President Judge on any date the court is in session.  An order detailing the manner of disposition and service will be entered by the President Judge after consideration of the motion.  Notice shall be given in advance to opposing counsel or any unrepresented party of the date and time of presentation of any motion for emergency relief."  Thus, Sawicki's allegation that it was "irregular" for

returned with a proposed order.  (*Id.*¶ 78.)  Robinson showed the proposed order to Judge Zanic, who directed Sawicki to file a petition.  (*Id.*)  Sawicki did so and went to the law library to wait for a meeting with Judge Zanic.  (*Id.*)  After an unspecified amount of time, Robinson returned to Sawicki and stated that Judge Zanic would not see her and that he had contacted the Pennsylvania State Police regarding the potential hostage situation involving Kissinger.  (*Id.* ¶ 79.)  Sawicki alleges that Robinson and Zanic agreed to deny Sawicki an opportunity to speak with Judge Zanic. (*Id.* ¶ 133.)  Later that day, Sawicki met with Kissinger twice and gave Kissinger clothing to wear to court.  (*Id.* ¶¶ 81, 84.)

On the morning of November 6, 2019, Sawicki and Wilson had a telephone conversation regarding the civil lien case against Kissinger's home, during which she advised Wilson of the Borough's potential liability.  (*Id.* ¶ 89.)  Sawicki alleges that after this call, Wilson called Judge Zanic and DA Smith to get advice on what to do regarding the Borough's potential liability.  (*Id.* ¶ 134.)  In the afternoon of November 6, 2019, Kissinger officially retained Sawicki to represent her in both the criminal and civil lien case.  (*Id.* ¶ 92.)  Thus, Sawicki entered an appearance on behalf of Kissinger on November 6, 2019, on the criminal docket.  (*Id.* ¶ 93.)  No attorney was listed for Kissinger prior to Sawicki's entry of appearance.  (*Id.* ¶

---

Robinson to refuse to set up a time for Sawicki and Judge Zanic to discuss the matter is not properly based on the Local Rule because Sawicki herself had not followed the Local Rule given that she did not initially file a motion.

93).[4]  Sawicki also filed a waiver of appearance at arraignment on Kissinger's behalf.  (*Id.*)

On November 7, 2019, Sawicki appeared at Kissinger's arraignment on Kissinger's behalf, but Kissinger was initially not present because Sawicki told her that she did not need to attend.  (*Id.* ¶¶ 94, 96.)  However, Wencker and Heaton contacted Kissinger and threatened her with arrest unless she came to the courthouse, and they also told Kissinger that Wencker was Kissinger's attorney of record, not Sawicki.  (*Id.* ¶¶ 96, 136.)  Kissinger then came to the courthouse, where Sawicki attempted to speak with Kissinger, but was physically blocked from speaking with her by an employee sent by DA Smith.  (*Id.*)  After the arraignment, Sawicki went to the AAA office to try to speak with Heaton, who was unavailable.  (*Id.* ¶ 97.)  Sawicki left a letter with Kipphan instead, which Sawicki alleges explained Kissinger's civil lien case.  (*Id.* ¶ 98.)  Additionally, during the lunch break that day, Zanic called the Disciplinary Board of the Supreme Court of Pennsylvania ("Board") to lodge a disciplinary complaint against Sawicki and enlisted Wencker to submit a statement in the action against Sawicki's law license.  (*Id.* ¶¶ 137, 148.)  Sawicki was unaware of this phone call at the time.  (*Id.* ¶ 158.)

---

[4] Although Sawicki states that no other attorney had entered their appearance for Kissinger at this point, the second amended complaint also alleges that Wencker had been Kissinger's attorney in her criminal case.  (*Id.* ¶ 80.)

Sawicki met with Kissinger on November 9, 2019, and confirmed that she wanted Sawicki to represent her in both the criminal and lien cases.  (*Id.* ¶¶ 101.)  Sawicki entered her appearance in the civil case on November 12, 2019, and handled the hearing scheduled for that day.  (*Id.* ¶ 102.)  Thereafter, Sawicki began litigating the lien case.  (*Id.* ¶ 107.)

Sawicki then wrote to Wencker on November 14, 2019, requesting his file on Kissinger's criminal case.  (*Id.* ¶ 104.)  On November 18, 2019, Sawicki filed a complaint with the Board about Wencker's conduct during Kissinger's criminal case.  (*Id.* ¶ 108.)  On November 19, 2019, Sawicki filed an investigation request against Judge Zanic with the Judicial Conduct Board.  (*Id.* ¶ 109.)

Sawicki served formal discovery requests on Wilson on November 25, 2019, and notified the Borough of her intent to serve a subpoena.  (*Id.* ¶ 111.)  Wilson sought assistance from DA Smith, who then sought to intervene and filed a motion to quash subpoena.  (*Id.* ¶¶ 112, 113.)  Sawicki continued to litigate the case, filing briefs in opposition to the motion to quash filed by DA Smith and a motion to stay proceedings filed by the Borough.  (*Id.* ¶¶ 114116.)

During the time period of December 2 through 6, 2019, Wilson, Heaton, and Wencker all tried to convince Kissinger to stop litigating the civil lien case and remove Sawicki as her attorney.  (*Id.* ¶140.)  On December 10, 2019, Judge Zanic and Robinson allegedly persuaded Public Defender Frederick Gutshall to

"cooperate in the appointment of county-paid counsel[,]" even though Sawicki was her counsel, there was no application for a public defender, and Kissinger was financially ineligible for a public defender. (*Id.* ¶ 141.)

Sawicki alleges that Judge Zanic called Paul Killian of the Board to verbally complain about Sawicki, and falsely accuse her of professional misconduct. (*Id.* ¶¶ 147–49.) Sawicki contends that Judge Zanic asked Killian to initiate disciplinary proceedings against her despite knowing that Sawicki had not violated any of the Rules of Professional Conduct. (*Id.*)

Sawicki alleges that all individual defendants learned of her "inquiries and court filings" throughout November and December, 2019, and "shared a purpose of deterring [Sawicki] from advocating for the civil rights of Ms. Kissinger or anyone else[,]" and "[i]ndividual defendants retaliated against [Sawicki] for her civil rights advocacy by taking steps to deprive the Law Office of its financial and personal resources . . . ." (*Id.* ¶¶ 144–46.) Sawicki alleges that individual defendants knew the Law Office could not operate if its only attorney lost her license, and they also knew no other local attorneys would join the firm to take up its advocacy work. (*Id.* ¶¶ 151, 152.) Sawicki further alleges "[d]efendants understood that every hour [Sawicki] expended in defending her license from administrative attack was an hour that could not be spent on advocacy." (*Id.* ¶ 153.)

Sawicki alleges that Wencker, Judge Zanic, and Robinson provided false information to the Board to initiate a disciplinary action against her. (*Id.* ¶¶ 155–57.) Thereafter, the Board began an investigation. (*Id.*¶¶ 160–70.) Sawicki submitted a response to the Board in August 2020. (*Id.* ¶ 168.) Having been alerted by Board requests for information that a disciplinary proceeding had begun against her, Sawicki requested records under the Right to Know Law from the County, Borough, and AAA. (*Id.* ¶ 172.) These requests were litigated all the way to the Commonwealth Court of Pennsylvania, which directed the Court of Common Pleas to hold a hearing, which has yet to happen. (*Id.*¶¶ 172–82.)

The Board continued its investigation, receiving written statements from Judge Zanic, Wencker, Robinson, Kipphan, Wilson, Heaton, and DA Smith. (*Id.* ¶¶ 183–210.) Sawicki alleges that each individual defendant conveyed false information with the purpose of "put[ting] a stop to [Sawicki's] advocacy for civil rights and to shut down the Law Office, in retaliation for [Sawicki's] activity during November through December 2019, because that activity was bringing to light the wrongful practices of the Borough, County, AAA, and the individual defendants that deprived Ms. Kissinger of her home and her liberty." (*Id.* ¶¶ 193, 195, 203, 209.)

The Board filed a petition for discipline against Sawicki in September 2021. (*Id.* ¶ 212.) Sawicki alleges the petition is virtually identical to the Board's first

request for information and contains multiple misstatements.  (*Id.* ¶¶ 212–15.) Sawicki hired counsel and used Law Office funds in order to defend her license. (*Id.* ¶¶ 216, 217.)

The Board held hearings on the Petition for Discipline against Sawicki on February 16 and 17, April 27, May 10, and August 29 and 30, 2022.  (*Id.* ¶ 219.) Sawicki asserts that Judge Zanic, Wencker, and Robinson falsely testified during these hearings.  (*Id.* ¶¶ 221–25.)  The Board entered a prima facie showing of a violation, and then filed proposed findings of fact and conclusions of law on November 7, 2022.  (*Id.* ¶ 227.)  Sawicki filed a brief contesting those findings on January 3, 2023.  (*Id.* ¶ 228.)  After this briefing, the Board filed a Report and Recommendation that was "virtually identical" to its prior findings.  (*Id.* ¶ 229.) Sawicki filed exceptions to the Report on March 21, 2023, and oral argument was held on April 10, 2023.  (*Id.* ¶ 231.)  The matter was adjudicated by the Board on April 20, 2023, but as of the time of filing the second amended complaint, no decision had been published.  (*Id.* ¶ 232.)[5]

Additionally, Sawicki alleges that the Borough, County, and AAA have policies and practices that caused her injury.  Specifically, she alleges that the

---

[5] The court notes that the Board recommended a suspension of one year and one day, and the Supreme Court of Pennsylvania has since adopted that recommendation.  *Office of Disciplinary Counsel v. Sawicki*, No. 107 DB 2021 (S. Ct. Order Dec. 22, 2023.) The court takes judicial notice of this determination, but it does not factor into the analysis provided below.

Borough "maintains an improper practice of hiring employees through cronyism and nepotism," and then retains these employees without sufficient review and disregard for incompetence. (*Id.* ¶ 234.) She alleges that Wilson was hired "without regard to the caliber of his legal skills or the quality of his character[,]" and remains employed despite evidence of incompetence. (*Id.* ¶ 235.) Sawicki alleges these mistakes led to the mishandling of the Kissinger matter, and but for this policy, Sawicki would not have sustained the constitutional injuries she alleges. (*Id.* ¶ 238.)

Sawicki alleges that the County has the same policy of "cronyism and nepotism." (*Id.* ¶ 240.) This policy, allegedly, has resulted in cost cutting which has led to a lower standard of representation provided by contract-conflict counsel, hiring of unqualified law clerks, and the closing of the law library. (*Id.* ¶¶ 241–45.) These cost cutting measures resulted in errors in the Kissinger case, which, when pointed out by Sawicki, caused Judge Zanic and DA Smith to retaliate against her. (*Id.* ¶¶ 246, 247.)

Lastly, Sawicki alleges that the AAA has an "improper practice of overriding the relevant statutory imperatives and legal procedures so as to facilitate quick resolutions to complex situations . . . [.]" (*Id.* at ¶ 251.) Additionally, the AAA has a policy of "requiring unlicensed employees to give legal advice to elderly clients on a range of issues, and to disregard any contrary legal advice even

11

if it comes from a licensed attorney." (*Id.* ¶ 252.)  These policies resulted in Heaton "manipulating" Kissinger, causing Sawicki to experience the constitutional injuries alleged.  (*Id.* ¶ 257.)

Those injuries include exhausting the funds of the Law Office to defend her law license and handing off her pending cases, thus terminating an income stream. (*Id.* ¶¶ 259, 260.)  Sawicki voluntarily retired her law license on March 4, 2022. (*Id.* ¶ 254.)  However, Sawicki still continues to advocate for civil rights through correspondence and telephone calls, and the instant litigation.  (*Id.* ¶ 266.)  Sawicki alleges that her physical and mental health have deteriorated because of defending her license and litigating this case.  (*Id.* ¶ 273.)

The second amended complaint alleges First Amendment retaliation for Sawicki's requests for records, deprivation of Sawicki's liberty interest in the practice of law without substantive due process, and deprivation of Sawicki's property interest in the Law Office funds without substantive due process against all defendants.  (*Id.* ¶¶ 274–87.)  Additionally, Sawicki alleges a conspiracy to deprive her of her constitutional rights against the individual defendants.  (*Id.* ¶¶ 288-90.)[6]

---

[6] The court notes that, while Sawicki alleges various policies by the municipal entities, she does not include a *Monell* claim in the cause of action section.

Sawicki initiated this action by filing a complaint on December 5, 2021. (Doc. 1.)  An amended complaint was filed on February 22, 2022, alleging First Amendment retaliation and violations of Due Process under 42 U.S.C. § 1983. (Doc. 29.)  All defendants filed motions to dismiss, which were fully briefed. (Docs. 38, 39, 40, 41, 57.)  The court granted the defendants' motions to dismiss on the basis that the amended complaint failed to state a claim of First Amendment retaliation and due process violations.  (Doc. 84.)  Specifically, regarding the First Amendment claim, the court held that Sawicki had not alleged that she had engaged in protected activity through the civil rights advocacy of the Law Office. (Doc. 83 at pp. 15–19.)[7]  The court also held that Sawicki had not properly alleged a deprivation of the liberty interest of her law license because disciplinary proceedings had not yet ended, and she had not sufficiently alleged a property interest in the Law Office or that Defendants had deprived her of that interest.  (*Id.* at 22–25.)

Thus, on May 31, 2023, Sawicki filed the amended complaint, the pleading now before the court.  (Doc. 85.)  On June 14, 2023, the Borough, Wilson, and the County all filed separate motions to dismiss.  (Docs. 88, 90, 91.)  On July 14, 2023,

---

[7] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

the Judicial Defendants filed a motion to dismiss.  (Doc. 106.)  All motions have been briefed and are ripe for review.

### JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is appropriate under 28 U.S.C. § 1391.

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

14

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts that

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

DISCUSSION

Stating a claim for a §1983 civil rights violation requires a plaintiff to

"demonstrate that the conduct complained of was committed by a person acting

under color of state law and 'that the conduct deprived him of rights, privileges, or

immunities secured by the Constitution.'"  *Carter v. City of Phila*, 989 F.2d 117,

119 (3d Cir. 1993) (citing *Robb v. City of Phila.*, 733 F.2d 286, 290–91 (3d Cir.

1984)).  Because a constitutional injury is a necessary prerequisite to Sawicki's

Section 1983 claims, the court will first determine whether Sawicki has adequately

pleaded constitutional violations in her second amended complaint.

## A. First Amendment Retaliation

On the First Amendment retaliation claim, the County Defendants argue that

Sawicki has no First Amendment right in her civil rights advocacy because the

Law office does not operate as a non-profit.  (Doc. 93, pp. 22, 23.)  They also

argue that there was no retaliatory action by these Defendants because the Board

took the adverse action, not County Defendants.  (*Id.* at 23.)  Finally, they argue

that there is no causal connection between Sawicki's civil rights advocacy and any misrepresentations to the Board.  (*Id.*at 23, 24.)

Wilson filed his own motion to dismiss and brief in support.  On the retaliation claim, Wilson argues that Sawicki has not alleged that she engaged in protected activity because she did not allege that she was advocating on behalf of a "non-profit political advocacy organization engaging in its own expressive or associational activity."  (Doc. 98, p. 14.)

Sawicki argues in response that she was retaliated against for the protected activity of requesting public records from the Borough.  (Doc. 100, p. 37.)[8]  She further argues that this act was a part of the civil rights advocacy of the Law Office, and thus, was a protected activity.  (*Id.* at 38–43.)  She states that the retaliatory action was causing the Board to initiate disciplinary proceedings and eviscerate her law practice.  (*Id.* at 43.)  She argues that she has alleged a causal connection because Judge Zanic called the Board the day after she initially began asking the Borough for records.  (*Id.* at 44.)

To plead a plausible First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and

_____

[8] The arguments regarding the First Amendment retaliation claim in her brief in opposition to Wilson's motion to dismiss are identical to her arguments in opposition to the County's motion. *Compare* Doc. 100 with Doc. 103.

(3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).  In her amended complaint, Sawicki frames her First Amendment retaliation claim as follows:

> Because the plaintiff's requests for public documents brought to light certain wrongful actions and omissions on the part of Borough, County, AAA, and their employees or agents named as defendants in this action, each defendant engaged in wrongful activities adverse to the plaintiff for retaliatory purposes with intent to cause the plaintiff to desist from litigation and other advocacy for civil rights, which are activities protected by the First Amendment to the United States Constitution.

Doc. 86, p. 86.  Sawicki further explains in her surreply:

> Count One alleges retaliation for activity protected by the First Amendment.  The protected activity was: <u>asking to review Borough's public records.</u>  The retaliation alleged was: the <u>false report</u> phoned in to the Disciplinary Board on November 7, 2019, preceded by communication among some of the defendants and then buttressed by all individual defendants during the next several years.

Doc. 116, p.10 (emphasis in original).  The court finds that Sawicki's framing of her claim in her surreply, Doc. 116, is an accurate representation of the amended complaint. Unfortunately, the parties' arguments do not address the claims framed in this manner.

Instead, the parties argue over whether Sawicki had a First Amendment right to engage in civil rights advocacy through the practice of law.  Specifically, they argue over the applicability of several cases examining the scope of the First Amendment right that attorneys have when soliciting clients.  *See Nat'l Ass'n for*

*the Advancement of Colored People v. Button*, 371 U.S. 415, 4361 (1963); *In re Primus*, 436 U.S. 412, 426–31 (1978); *Jacoby and Myers, LLP v. Presiding Justices of 1ˢᵗ, 2d, 3d, and 4ᵗʰ Dept's of Sup. Ct. of N.Y.,* 852 F.3d 178, 186 (2d Cir. 2017).

These cases involve challenges to state law rules of professional conduct prohibiting attorneys from soliciting clients in certain ways. Grounded in *Button*, this line of cases generally stands for the proposition that certain attorneys have a First Amendment right to solicit clients in certain ways because the attorney works for a group that engages in political association beyond just the litigation branches of the organization. *Button*, 371 U.S. at 431 (holding the NAACP engages in litigation as a form of political expression and thus has a First Amendment right to solicit clients through referral); *In re Primus*, 436 U.S. at 431–32 (ACLU "engages in litigation as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public" and thus has a First Amendment right to solicit clients through referrals); *Jacoby & Meyers*, 852 F.3d at 186 (holding that a for-profit law firm did not have a First Amendment right to associate with its clients because it was not engaged in expressive political activity). These cases protect the rights of lawyers engaged in certain types of advocacy to solicit clients because the advocacy the lawyers engage in is one way

for these clients to access the courts and exercise their rights. *In re Primus*, 436 U.S. at 426.

These cases are inapposite because they all arise in the context of an attorney soliciting clients and how these rights may or may not be circumscribed by state regulations. There are no allegations that Sawicki was retaliated against for soliciting clients. While Sawicki alleges that the Law Office engages in civil rights advocacy generally, she does not allege that defendants retaliated against her for exercising the First Amendment right to solicit clients (even assuming she has a First Amendment right to solicit clients as a private attorney). Additionally, Sawicki argues that the First Amendment protects civil rights advocacy *generally* – not specifically with respect to soliciting clients.[9] All of this aside, Sawicki actually alleged that she engaged in the protected activity of asking to review the Borough's records. As such, the court will determine whether this is a protected activity.

---

[9] The court notes that Sawicki also argues that civil rights advocacy is "professional speech" as recognized by *King v. Governor of N.J.*, 767 F.3d 216 (3d Cir. 2014). *King* recognized "professional speech" as a unique category of speech under the First Amendment and applied intermediate scrutiny to determine if a New Jersey law violated the First Amendment rights of therapists. *Id.* at 237. This case was abrogated by *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372, which expressly rejected the idea that professional speech is a separate category of speech and applied the recognized categories of content-based restrictions and commercial speech. In any event, Sawicki has not alleged that Defendants retaliated against her for "civil rights advocacy," as explained above.

Most cases regarding requests for records arise from a context in which the governmental entity denied access to the requested records. *See PG Pub. Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013). These types of claims have their own analytical framework, which is not pleaded here,[10] and there is no allegation that Sawicki did not receive the documents she requested in November 2019. Thus, the second amended complaint has not properly raised this type of claim.

There is scant case law regarding the right of citizens, generally, to request documents. However, relying on the general First Amendment right of private citizens to speak and the right to petition the government for redress of grievances, the Eleventh Circuit has held that "a citizen's public records requests and lawsuits against the government can clearly constitute protected First Amendment activity." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288–89 (11th Cir. 2019). The Third Circuit has also recognized that "except for certain narrow categories deemed unworthy of full First Amendment protection–such as obscenity, 'fighting words' and libel–all speech is protected by the First Amendment." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 382–83 (3d Cir. 2004). Accordingly, Sawicki

---

[10] *PG Pub. Co.* explains the legal test for examining an individual's right to access the government and how the Third Circuit has expanded its scope. The test is often called the "experience and logic test" and requires a "two-prong evaluation of 'whether the place and process have historically been open to the press' and 'whether the public access plays a significant positive role in the functioning of the particular process in question.' Where both prongs of the test are satisfied, 'a qualified First Amendment right of public access attaches.'" *Id.* (citation omitted.)

requesting records from the Borough office is speech protected by the First Amendment.

Second, in order to state a claim for First Amendment retaliation, Sawicki must plead that there was "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights[.]" *Thomas*, 463 F.3d 285. This is an objective determination of "whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred." *Shutt v. Miller*, 724 Fed. App'x 112, 114 (3d Cir. 2018). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (standard accepted by the Third Circuit in *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001)). Thus,

> When a public official is sued for allegedly causing a third party to take some type of adverse action against plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character. It is not enough that defendant speaks critically of plaintiff or even that defendant directly urges or influences the third party to take adverse action. Rather, defendant must "threaten" or "coerce" the third party to act.

*McLaughlin*, 271 F.3d at 573. Accordingly, "in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action

22

will follow, such speech does not adversely affect a citizen's First Amendment rights even if defamatory." *Id.*

As noted above, the alleged retaliatory action was Judge Zanic making a false report to the Board. There is no allegation that Judge Zanic or any defendant, directly retaliated against Sawicki, such as defaming her or humiliating her publicly. There are no allegations that Judge Zanic threatened the Board to bring a disciplinary petition or threatened Sawicki herself with bringing a disciplinary petition. There are also no allegations that Judge Zanic, or any defendant, coerced any Board member throughout the disciplinary hearings. There are only the allegations that individual defendants lied during their participation in the disciplinary proceedings, and the conclusory allegations that the Board adopted these lies wholesale because Judge Zanic was a judge, despite the extensive investigation and hearings conducted by the Board. (Doc. 85, ¶ 230.) Besides Sawicki's belief that the Board inappropriately relied on Defendants' statements, there is no retaliatory act which brought the requisite "quantum of governmental authority to bear[]" against Sawicki. *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (citing *Novoselsky v. Brown*, 822 F.3d 342 (7th Cir. 2016) which held that a government official filing an attorney discipline complaint was not a retaliatory act sufficient to state a claim for First Amendment retaliation)). Accordingly, because Sawicki fails to allege a retaliatory act, the second amended

complaint fails to state a claim for First Amendment retaliation and will be dismissed.

However, even if filing a false disciplinary complaint was a retaliatory act, Sawicki still fails to allege the third element of a First Amendment retaliation claim, which is a causal connection between the protected activity and the retaliatory conduct. "The required link is 'but-for' causation." *Mirabella*, 853 F.3d at 651. Thus, Sawicki must allege that but for her requesting documents from the Borough, Defendants would not have filed a false disciplinary report. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Here, Sawicki has alleged that Judge Zanic knew of her conversation with Wilson "on or shortly after November 6" and called the Board on November 7. (Doc. 85, ¶¶ 134, 148.) However, she also alleges that on the day that Judge Zanic called the Board, there was commotion in the courtroom regarding Sawicki's representation of Kissinger, and there had been an exchange between her and Judge Zanic regarding her attempts to have sheriffs escort her to Kissinger's home. (*Id.* at ¶94.) Moreover, Sawicki avers that Defendants retaliated against her for her civil rights advocacy generally, and not solely this

specific records request, and that the November 7 call was in retaliation for events that happened after the call was made.  (*Id.* at ¶ 144–46.)  Accordingly, Sawicki has not alleged that her document requests were the but for cause of Defendants' retaliatory action.

For these reasons, Sawicki's First Amendment retaliation claim will be dismissed.

## B. Due Process

Sawicki alleges both procedural and substantive due process violations for the alleged deprivation of her liberty interest to advocate for civil rights.  (Doc. 116, p. 10.)  She also alleges both procedural and substantive due process claims for deprivation of her property interest in the LLC and its funds.  (*Id.*)  The parties that address this claim argue that Sawicki has not stated a claim for a procedural due process violation because the disciplinary process has not yet ended, the named Defendants do not possess the authority to deprive her of her license, and she voluntarily retired her law license.  (Doc. 93, p. 26, 27; Doc. 98, p. 14–16.) They also argue that she has not stated a claim for a substantive due process violation because the Law Office funds were not her personal property.  (Doc. 93, p. 27, 28; Doc. 98, p. 17, 18.)  The court will address each type of due process claim in turn.

## 1. Procedural Due Process

In order to state a claim for the deprivation of a procedural due process right under § 1983, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Dunmore Sch. Dist. v. Pennsylvania Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 459 (M.D. Pa. 2020). Even assuming Sawicki has appropriately alleged a property interest sufficient to state a claim for deprivation of procedural due process, there is not a single allegation in the ninety-page second amended complaint that the procedures provided by the Pennsylvania Supreme Court in the disciplinary process failed to provide Sawicki with due process of law. At most, Sawicki alleged that the process is "meager" and she speculates that the Board inappropriately relied on statements by Defendants, rather than her own statements. (Doc. 85, ¶ 230.) This amounts to no more than mere speculation about the sufficiency of the Board's process or possibly a collateral attack on the decision-making process by the Board. Accordingly, she has not stated a claim for a procedural due process violation.

## 2. Substantive Due Process

The Third Circuit Court of Appeals has recognized two strands of substantive due process, differentiated by the nature of the government action:

legislative versus non-legislative.  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000).  Non-legislative, or executive, actions "typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society."  *Id.* at 139, n.1.  Here, it is clear that Sawicki's claims are non-legislative.

To prevail on a non-legislative substantive due process claim, a plaintiff must first establish a protected property interest to which the Fourteenth Amendment's protection applies.  *Id.* at 139–40.  The Third Circuit has required plaintiffs to identify a "particular quality of property interest."  *Id.* at 140.  Whether a certain property interest embodies this particular quality is not determined by reference to state law, but depends on whether that interest is "fundamental" under the Constitution.  *Id.*  The asserted property interest must be considered against the background of constitutional purposes, rationally developed and historically perceived, with respect for the teachings of history and a solid recognition of the basic values that underlie our society.  *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229–30 (1985) (Powell, J. concurring).  The Third Circuit has "so far limited non-legislative substantive due process review to cases involving real property ownership [and has] been reluctant to extend substantive due process protection to other, less fundamental property interests."  *Id.* at 140–41.  The court also notes that the interests protected by substantive due process are

different than those interests protected by procedural due process because rights protected by procedural due process derive from state laws, whereas rights protected by substantive due process derive from the Constitution. *See Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989).

Sawicki alleges deprivation of two separate interests in violation of substantive due process: a liberty interest in conducting civil rights advocacy and a property interest in the operating funds of the Law Office, an LLC. The court will address each in turn, starting with the liberty interest.

"The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994). More specifically, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Id.* Therefore, "[t]o allege a violation of the[] right 'to hold specific private employment and to follow a chosen profession free from unreasonable government interference, . . . Plaintiffs must allege an inability to obtain employment within the field, not just a particular job or at a specific location or facility.'" *Harmon v. Borough of Belmar*, No. 3:17-cv-2437, 2018 WL 6068216, at * 5 (D.N.J. Nov. 20, 208) (quoting *Culinary Serv. of De. Valley, Inc. v. Borough of Yardley, Pa.*, 385 Fed. App'x 135, 141 (3d Cir.

28

2010).  Although not expressly adopted by the Third Circuit, it stands to reason that the "the liberty to pursue a calling or occupation" is a fundamental type of interest protected by substantive due process, whereas "the right to a specific job" is not.  *See Burns v. Alexander*, 776 F. Supp. 2d 57, 92 (W.D. Pa. 2011).

Here, Sawicki has only alleged that she can no longer pursue the calling of civil rights advocacy through the means of litigation, rather than alleging that she has been completely foreclosed from advocating for civil rights.  In fact, Sawicki specifically alleges that she still does participate in civil rights advocacy, albeit at a diminished capacity.  (Doc. 85, ¶ 266.)  Moreover, Sawicki voluntarily gave up her law license through retirement.  The state did not deprive her of any liberty interest in her ability to practice law, because she had already voluntarily surrendered that interest.  Therefore, the second amended complaint fails to state a claim for a substantive due process violation of Sawicki's liberty interest in conducting civil rights advocacy and will be dismissed on these grounds.

Next, the court turns to whether Sawicki has sufficiently alleged a fundamental property interest in the operating funds of the Law Office for substantive due process purposes.  Here, Sawicki has alleged that, under state law, she has a property interest in the funds of the LLC by virtue of her role as member.[11]  However, Sawicki has not provided any authority or support for the

---

[11]  15 Pa. Con. Stat. § 8841(f).

assertion that a state law interest in an LLC is the fundamental type of property interest that is protected by substantive due process. Heeding the guidance to expand substantive due process with only the utmost care, the court declines to expand substantive due process here. Therefore, the second amended complaint fails to state a claim for a violation of substantive due process and will be dismissed on this basis.

In conclusion, the second amended complaint fails to state any constitutional violation. Further, Sawicki cannot state a claim under § 1983 against the individual defendants or the municipal defendants because she fails to allege a deprivation of a constitutional right. Similarly, the second amended complaint cannot support a claim for conspiracy to violate another's constitutional rights because she has not adequately alleged a violation of a constitutional right. *See Black v. Montgomery County*, 835 F.3d 358, 372 n.14 (3d Cir. 2016). Accordingly, the second amended complaint will be dismissed in its entirety.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has held that amendment should be freely given, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In civil rights cases, "courts must offer amendment  irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

Here, the court finds that amendment would be futile.  Having filed three complaints so far, Sawicki has been unable to allege facts which show that she sustained a constitutional injury as a result of the factual circumstances detailed in her complaints.  *See O'Donnell v. Simon*, 362 Fed. App'x 300, 305 (3d Cir. 2010) (upholding district court's denial of leave to amend after second failure to assert a constitutional injury.)  Accordingly, any further amendment would be futile, and the second amended complaint will be dismissed with prejudice.

## CONCLUSION

The second amended complaint fails to state a claim of First Amendment retaliation or a deprivation of procedural or substantive due process rights. Further amendment would be futile. Accordingly, the second amended complaint is dismissed with prejudice. An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: January 18, 2024